Argued 10 December, 1900; decided 21 January, 1901.

## HOFFMAN v. HABIGHORST.

[63 Pac. 610.]

BILLS AND NOTES — PAROL EVIDENCE OF SURETYSHIP.

1. Where several parties have signed a promissory note as makers, but some of them are in reality only sureties, the true relationship of the parties may be shown by parol, as against a holder with knowledge of the

facts, whether the principal's name appears on the note or not: *Findley* v. *Hill*, 8 Or. 247; *Brown* v. *Rathburn*, 10 Or. 158; *Hughes* v. *Pratt*, 37 Or. 45, followed.

RELINQUISHMENT OF COLLATERAL AS A RELEASE OF A SURETY.

2. The relinquishment of collateral security by a holder of a negotiable promissory note, without the consent of those whom such holder knows are sureties, operates as a release *pro tanto* of the sureties or the property that stands as security: *Brown* v. *Rathburn*, 10 Or. 158, and *Denny* v. *Seeley*, 34 Or. 364, followed.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Action by Julia E. Hoffman, as executrix of the estate of Lee Hoffman, deceased, against E. H. Habighorst and others, on a promissory note for $15,000, executed by the appealing defendants and five others, payable to Mrs. Sarah Wertheimer, and by her assigned to the plaintiff after maturity. The complaint is in the usual form, setting out the note *in haec verba* as follows:

"$15,000.                    Portland, Oregon, Feb. 29, 1892.

"One year after date, without grace, we jointly and severally promise to pay to the order of Mrs. Sarah Wertheimer, fifteen thousand dollars, for value received, with interest from date at the rate of eight per cent per annum until paid, principal and interest payable in U. S. gold coin; and, in case suit is instituted to collect this note, or any portion thereof, we promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit. Interest payable quarterly.

" [Signed]

| " E. H. HABIGHORST, | OSMAN ROYAL, |
|---|---|
| " G. W. WILLIAMS, | JOHN CORKISH, |
| " D. L. EDWARDS, | E. P. FRASER, |
| " J. P. LOONEY, | J. P. RASMUSSEN, |
| " S. A. STANSBURY, | ALFRED KUMMER, |
| " MARIA A. SMITH, | THQS. VAN SCOY, |
| " G. W. STAVER, | F. L. POSSON." |
| " R. KELLY, | |

The answering defendants deny the allegations of the complaint, and as a further defense plead, in substance, that the Portland Guarantee Company, a corporation, desiring to obtain from Mrs. Wertheimer a loan of $15,000, applied to them and their co-makers to act as its sureties, and, by way of inducement, represented, with the knowledge of Mrs. Wertheimer, that it was solvent, and promised that, if they would sign the note, and permit it to be pledged as collateral security for the loan, it would execute to them its own note for a like amount, and secure the same by deed to real property of the value of $30,000; that, relying on such representations, they signed the note as sureties only, without any consideration whatever moving to them, and it was delivered to and accepted by the payee, with knowledge of the facts, as collateral security for a loan made by her to the guarantee company; that the company failed and neglected to keep and perform its contract with the defendants, but sold and disposed of a large amount of its property and applied the proceeds to other uses. It is further alleged that in consideration of an increase in the rate of interest from 8 to 10 per cent, to be paid by the guarantee company, and additional security by deed of conveyance to her from the company of 100 lots in University Park, Mrs. Wertheimer, the payee of the note, after its maturity, and without the knowledge or consent of the defendants or the other makers, entered into the following contract in writing with the guarantee company: "Whereas, Sarah Wertheimer, on the twenty-ninth day of February, 1892, loaned to E. H. Habighorst, G. W. Williams, and thirteen others the sum of $15,000 for one year, and took their promissory note therefor, bearing interest, payable quarterly, at the rate of 8 per cent per annum, and said note remains unpaid; and whereas, said Habighorst, Williams, and others borrowed said sum for the Portland Guarantee Company, a corporation, and said company at the time of said borrowing received said

sum, and has ever since had and used the same, and paid to said Wertheimer the interest thereon quarterly as it has fallen due; and whereas, said company desires a further extension of the time of said loan, and, in order to further secure the repayment thereof has this day executed and delivered to said Wertheimer the deed conveying to her the following described lands in the City of Portland, County of Multnomah, State of Oregon, to wit: All of blocks 49, 51, 53, 57, as shown and described on the duly-recorded plat of University Park,—in consideration of all of which it is now hereby agreed by and between said Wertheimer and said company that said Wertheimer shall and will extend the time for the payment of said loan so that it may be paid by said company on or before the twenty-ninth day of August, 1894; that she will reconvey to said company all of the lands described in said deed upon the repayment of said loan in full; and that said company shall and will pay or cause to be paid to said Wertheimer, at Portland, Oregon, interest quarterly on said note to August 29, 1893, at the rate of 10 per cent per annum. Witness our names hereunto set by our authority this twenty-first day of August, 1893. Executed in duplicate. [Signed] Sarah Wertheimer, by Ben Selling. [Signed] Portland Guarantee Company, by P. L. Willis, Secretary"; that afterwards, on the twenty-fourth of September, 1895, Mrs. Wertheimer, without the knowledge or consent of the makers of the note, released to the guarantee company all the security for the payment of such indebtedness which she had previously received from it; that the security so released was worth more at the time than the amount of such indebtedness, and was wholly lost to defendants; that the plaintiff, at the time she received the note from Mrs. Wertheimer, had full knowledge of all the foregoing facts. These matters are pleaded in detail as three separate defenses; (1) as a failure of consideration; (2) as a release and discharge from liability thereon because of the

agreement extending the time of payment in consideration
of an increase in the rate of interest, and of further and
additional security, and the subsequent release to the com-
pany of such security without the knowledge or consent of
the defendants or their co-makers; and (3) as, in legal ef-
fect, a payment by the guarantee company of the debt or ob-
ligation for which the note was executed. A demurrer to
the first and second further and separate defenses was sus-
tained by the court below on the ground that they did not
state facts sufficient to constitute a defense, and a portion of
the third was stricken out on motion. A trial was subse-
quently had before a jury, resulting in a verdict and judg-
ment in favor of the plaintiff, from which the defendants
appeal.                                            REVERSED.

For appellants there was a brief over the names of *Dell
Stuart* and *Fenton, Bronaugh & Muir,* with an oral argu-
ment by *Mr. Stuart* and *Mr. Wm. D. Fenton.*

For respondent there was a brief by *Mr. Guy G. Willis,*
with an oral argument by *Mr. Parish L. Willis.*

MR. CHIEF JUSTICE BEAN, after stating the case, deliv-
ered the opinion of the court.

1.  The position of the plaintiff is that the demurrer to
the answer was properly sustained, because it cannot be
shown by parol that the defendants were in fact accommo-
dation makers, or sureties, for the Portland Guarantee Com-
pany.  It is argued in support of this position that to permit
the introduction of such evidence would be a violation of
the well-settled rule that parol evidence is not admissible to
vary, alter, or affect the terms of a written contract.  There
is some conflict in the authorities, and especially among the
earlier adjudications, as to the right of one who appears on
the face of a negotiable promissory note as a maker to show

at law by parol that he was in fact a surety for a co-maker. But the doctrine of this court, supported by the great weight of authority, is that he may do so for the purpose of affecting the creditor, who, having notice of the true relationship of the parties, is bound to act so as not to impair the legal rights or diminish the remedies of the surety: *Findley* v. *Hill,* 8 Or. 247 (34 Am. Rep. 578) ; *Brown* v. *Rathburn,* 10 Or. 158; 1 Am. & Eng. Enc. Law (2 ed.), 343; 1 Brandt, Sur. (2 ed.), § 29; Colebrooke, Coll. Sec. (2 ed.), § 203; Tiedeman, Com. Paper, § 422; 2 Randolph, Com. Paper (2 ed.), § 909; *American, etc., Invt. Corp.* v. *Marquam* (C. C.), 62 Fed. 960; *Hubbard* v. *Gurncy,.* 64 N. Y. 457; *Riley* v. *Gregg,* 16 Wis. 666; *Holmes* v. *Goldsmith,* 147 U. S. 150 (13 Sup. Ct. 288) ; *Grafton Bank* v. *Kent,* 4 N. H. 221 (17 Am. Dec. 414, and note). The question first came before this court in *Findley* v. *Hill,* 8 Or. 247 (34 Am. Rep. 578), which was an action on a joint and several promissory note executed by two parties. One of them set up as a defense that he was a surety for the other, and that the payee, without his assent, had entered into an agreement with his principal by the terms of which the time of payment was extended; and the court said: "If this was a valid agreement, it is quite clear that it operates as a discharge of the appellant, for it is well settled that, where time is given to the principal debtor without the assent of the surety, by a valid agreement which ties up the hands of the creditor, the surety is discharged." *Brown* v. *Rathburn,* 10 Or. 158, was also an action on a joint and several promissory note, and it was held that one of the makers might allege and prove at law that he was in fact a surety, for the purpose of showing that he had been discharged because of a voluntary relinquishment by the creditor, with knowledge of his suretyship, of collateral security of equal or greater value than the amount of his debt. And in the recent case of *Hughes* v. *Pratt,* 37 Or. 45 (60 Pac. 707), it was held that one joint maker of a

promissory note might set up and prove at law that he was a mere surety for a co-maker who had subsequently paid and discharged the note, but caused it to be assigned to another, who brought an action thereon to recover from the surety.

The admission of parol evidence to show the true relationship of the makers of a promissory note, and that the payee had notice thereof, does not alter or vary the terms of the original contract, or affect its integrity. It is merely proof of an independent or collateral fact, which operates to relieve the surety from liability when the creditor, with knowledge of the fact, has changed the original or made a new contract with the principal debtor, without the knowledge of the surety, or released any security he may hold for the payment of the debt. "The fact that one debtor is a surety for the other is no part of the contract with the creditor," says Mr. Chief Justice GRAY, "but is a collateral fact showing the relation between the debtors; and, if it does not appear on the face of the instrument, this fact, and notice of it to the creditor, may be proved by extrinsic evidence": *Guild* v. *Butler,* 127 Mass. 386. The creditor may rely upon the note as it is made, and hold the makers thereof to a strict performance of their contract, and it cannot be contradicted or varied by parol. If a creditor, however, has knowledge that they are in fact sureties for another, he may not deal with such person in relation to the debt without incurring the risk of releasing the sureties. The right of the surety to be thus protected against the acts of the creditor does not depend upon the terms of the contract, but upon the equities arising out of the circumstances of the case, and the creditor is affected by the knowledge of the true relation of his debtors, acquired at any time before he does the act altering the position of the surety.

It is contended that, while parol evidence may be admissible to show that one or more of the makers of a promissory note are sureties, such fact, although known to the payee,

cannot be shown as to all the makers, where the real debtor does not join in the primary obligation. But, within the meaning of the rule under consideration, every one who incurs a liability in person or estate, for the benefit of another, without sharing in the consideration, stands in the position of a surety, whatever may be the form of his obligation. It is true that generally the primary obligor or real debtor joins in the contract with the sureties. This is not, however, believed to be necessary or essential. "The relation of suretyship," say the editors of White & Tudor's Leading Cases in Equity, "grows out of the assumption of a liability at the request of another, and for his benefit. It may, consequently, arise, although the name of the principal does not appear in the instrument which constitutes the evidence of the debt": 1 Lead. Cas. Eq. (4 ed.), 149. And in 2 Am. Lead. Cas. (5 ed.), 441, it is said: "In this, however, as in other cases, equity has regard to the substance of the transaction. If a promise be made for the benefit of another, without sharing in the consideration, the promisor will be a surety, whatever may be the form of the agreement. * * * The obligation of the surety may be indirect that another shall perform or direct that he will perform himself; he may be jointly bound or appear on the face of the writing as the sole debtor without his being on that account less a surety, or losing the equitable rights which belong to him in that capacity." And Mr. Chief Justice COOLEY, in speaking to the same question, says: "Now, a surety, as we understand it, is a person who, being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed before the surety was compelled to do so. It is immaterial in what form the relation of principal and surety is established, or whether the creditor is or is not contracted with in the two capacities,—as is often the case when notes are given or bonds taken. The relation is fixed by the ar-

rangement and equities between the debtors or obligors, and may be known to the creditor, or wholly unknown. If it is unknown to him, his rights are in no manner affected by it; but, if he knows that one party is surety merely, it is only just to require of him that in any subsequent action he may take regarding his debt he shall not lose sight of the surety's equities" : *Smith* v. *Shelden,* 35 Mich. 42 (24 Am. Rep. 529).

Within these principles there seems no valid reason why it may not be shown by parol that a promissory note was in fact made to secure the debt and liability of another, and thus all the makers be entitled to the rights of a surety as to the payee of such note having knowledge of the facts. If such a note is enforced against the makers, they would clearly be entitled to be indemnified by the principal debtor; and this is given as one of the tests of suretyship. The form of the obligation would not prevent the introduction of such evidence, because, as said by Mr. Justice CAMPBELL, in *Canadian Bank of Commerce* v. *Coumbe,* 47 Mich. 358 (11 N. W. 196), "it is always competent to show that any obligation, whatever its form, was in fact made for the debt or liability of another; and, where this is the case, the contract is one of suretyship, and the surety, if he is held to pay it, may sue for reimbursement.   *   *   *   And when a creditor knows that his debtor is a surety he is bound to take no steps which will change the liability of the principal, without the surety's consent.   *   *   *   This doctrine is too elementary to require any discussion." Mr. Brandt says: "The sole maker of a promissory note is sometimes entitled to stand in the position of a surety": 1 Brandt, Sur. (2 ed.), § 38. This statement of the text writer is supported by *McQuesten* v. *Noyes,* 6 N. H. 19, in which it appeared that some time before the date of the note sued on, Noyes, the defendant, had signed a note to a bank as surety for one Wyatt; that, shortly before it became due, Wyatt, who had gone from home, wrote to Noyes, saying that he should not be able to return

in season to make payment, and requesting him to obtain the money of plaintiff, and pay the note, promising that he would replace it on his return. Noyes showed the letter to plaintiff, and obtained the money by giving his individual note, joined in by a third party, and paid the amount received over to the bank. Wyatt, on his return, offered to pay the note, but the plaintiff permitted him to retain the money, and agreed to wait for the amount due until some future time. It was held that Noyes was entitled to stand in the position of a surety, and that, under the circumstances, Wyatt's offer to pay should be regarded as a payment, and the agreement to wait as a new loan to him. RICHARDSON, C. J., speaking for the court, said: "The defendants in this case gave the note on account of Wyatt, who promised to replace the money on his return from Canada; and all this was known to the plaintiff. The defendants, then, are, in our opinion, entitled to stand on the ground of sureties with respect to the plaintiff, in the same manner as if Wyatt's name had been upon this note as a principal." The doctrine that the offer of Wyatt to pay the note, and the agreement of the holder that he might retain the money, were sufficient to justify the jury in finding that there was a contract for an extension of payment, has been doubted *(Hoyt* v. *French,* 24 N. H. 198, 203), but the holding that Noyes was entitled to the rights of a surety has not been questioned, so far as we are advised.

2.   It is a familiar rule that, when property of any kind is mortgaged or pledged by the owner for the debt of another, it occupies the position of a surety or guarantor, and anything that would discharge an individual surety who was personally liable will, under similar circumstances, discharge such property: 1 Brandt, Sur. (2 ed.), § 34; 24 Am. & Eng. Enc. Law (1 ed.), 722. And no reason is apparent why the same rule should not apply to one who has loaned the credit of his name as security for the payment of another's obligation. There is no greater virtue, as a matter of law, in a

tract of land or a chattel that may be pledged to secure the payment of a debt than in the name of the owner. According to the answer, the individual credit of the makers of the note upon which the action is founded was given for the debt of the guarantee company, to the knowledge of the payee; and under such circumstances the principles of equity and natural justice would prevent her from dealing with the real debtor in any way so as to change the status of the parties or the contract without the consent of all.. Now, it is elementary law that a surety will be discharged where a valid contract is made between the creditor and the principal debtor extending the time of payment, or where securities held by the creditor are voluntarily surrendered without the consent of the surety, at least to the value of such securities. The answer alleges and the demurrer admits that Mrs. Wertheimer, the original payee of the note, not only made a contract with the guarantee company extending the time of the payment of the debt, but at the same time, took a mortgage on real property from it as additional security, of greater value than the amount of the debt, and afterwards released such mortgage without the knowledge or consent of the defendants. If this is true, and the defendants were in fact sureties for the company, or entitled to stand in the position of sureties, it is a complete defense, for the reason, stated by Mr. Colebrooke, that: "The surety is entitled upon payment to be subrogated to the collateral securities held by the creditor from the principal debtor, whether such securities were recieved at the time the contract of suretyship was entered into or subsequently, or without the knowledge of the surety. This right of the surety is one not founded upon contract, but is supported upon principles of equity and natural justice, and the tendency is to enlarge and extend its application": Colebrooke, Coll. Sec. (2 ed.), § 212.

This question arose in the case of *Baker* v. *Briggs,* 8 Pick. 122 (19 Am. Dec. 311), where the surrender of a horse and

gig of the principal, which had been received from him as security after the debt was contracted, was held to exonerate the surety; and it was said that this result would follow whenever the creditor relinquished assets or effects of any description which might have been applied in payment. "Now, it seems to be a well-settled principle in equity," says PARKER, C. J., "that a creditor who has the personal contract of his debtor, with a surety, and has also, or takes afterwards, property from the principal as a pledge or security for his debt, is to hold the property fairly and impartially for the benefit of the surety as well as himself; and, if he parts with it without the knowledge or against the will of the surety, he shall lose his claim against the surety to the amount of the property so surrendered." To the same effect is *Brown* v. *Rathburn,* 10 Or. 158; also *Denny* v. *Seeley,* 34 Or. 364 (55 Pac. 976). Under the law, then, and upon the facts pleaded, it seems to us clear that the defendants stand in the position of accommodation makers, or sureties, as between themselves and the Portland Guarantee Company, and that, if the payee, with knowledge of that fact, so dealt with the company as to relinquish or release to it any securities she may have had for the payment of the debt, she thereby discharged the defendants from liability to the extent and value of the securities so released; and as the plaintiff purchased with full knowledge of all the facts, she stands in no better position than her assignor. In our opinion, therefore, the court below was in error in sustaining the demurrer to the answer, for which reason the judgment must be reversed, and the cause remanded, with directions to overrule the demurrer, and for such further proceedings as may be proper, not inconsistent with this opinion.                           REVERSED.