Argued March 19; affirmed May 13, 1947

# WALIN ET AL. *v.* YOUNG

(180 P. (2d) 535)

*Norman K. Winslow,* of Salem (with W. C. Winslow, of Salem, on brief), for Appellants.

*Bruce Spaulding* and *Asa L. Lewelling,* of Salem, for Respondents.

Before Rossman, Chief Justice, and Lusk, Belt, Bailey and Hay, Justices.

190

LUSK, J.

The theory upon which plaintiffs rest their claim for equitable relief is that the Hurleys are the principal debtors and the plaintiffs, to the extent of the judgment against them, mere sureties; that this relationship was known to the Corporation; and that the act of the latter in surrendering to the Hurleys property which had been seized on execution, of greater value than the judgment against the plaintiffs, and in agreeing not to enforce the decree against the Hurleys beyond the $1,250.00 paid by them at the time of the release of the levy, was effective to discharge the plaintiffs.

 It is "elementary law", as stated by Mr. Justice ROBERT S. BEAN in *Hoffman v. Habighorst,* 38 Or. 261,

271, 63 P. 610, 53 L. R. A. 908, "that a surety will be discharged where a valid contract is made between the creditor and the principal debtor extending the time of payment, or where securities held by the creditor are voluntarily surrendered without the consent of the surety, at least to the value of such securities." And see *Reynolds v. Vint*, 73 Or. 528, 532, 144 P. 526; *Cellers v. Meachem*, 49 Or. 186, 188, 89 P. 426, 10 L. R. A. (N. S.) 133, 13 Ann. Cas. 997; Restatement, Security, § 132.

> "When, therefore, the creditor, without the assent of the surety, releases or abandons a levy of execution on the property of the debtor, the surety will generally be discharged to an extent equal to the property so surrendered or relinquished." 50 Am. Jur., Suretyship, 978, § 112.

■ This is because: "The surety is entitled, upon paying the debt, to subrogation to all the securities which the creditor may have at any time acquired for the payment thereof, and it results as a corollary from this proposition, that if this right is rendered unavailing by the act of the creditor, the surety is discharged to the extent that he is injured." 1 Brandt, Suretyship and Guaranty, (3d ed.) 903, § 480.

■ But this duty of the creditor to respect the rights of the surety is dependent upon his knowledge of the relation. As stated by Mr. Chief Justice Cooley in *Smith v. Shelden*, 35 Mich. 42, 24 Am. Rep. 529, and quoted with approval in *Hoffman v. Habighorst*, supra, 38 Or. 268, "the relation is fixed by the arrangement and equities between the debtors or obligors, and may be known to the creditor, or wholly unknown. *If it is unknown to him, his rights are in no manner affected by it;* but, if he knows that one party is surety merely, it is only just to require of him that in any subsequent

action he may take regarding his debt he shall not lose sight of the surety's equities.'' (Italics added) See, also, 50 C. J., Principal and Surety, 111, § 189.

The creditor's knowledge of the fact of suretyship must be alleged and proved by the surety. *Lamson v. First National Bank,* 82 Ind. 21, 23; *Davenport v. King,* 63 Ind. 64, 66; *Neel v. Harding,* 2 Met. (Ky.) 247, 251. Consequently, unless the complaint shows not only that the plaintiffs were sureties, but also that the Corporation, with knowledge of that fact, violated their rights, it does not state a cause of suit. And, since the plaintiffs are standing upon the complaint after a demurrer to it had been sustained, it must be presumed that they have stated their case as strongly as the facts will permit, and the language of the complaint must be construed most strongly against the pleader. *Simpson v. First National Bank,* 94 Or. 147, 153, 185 P. 913.

In order to determine whether the Corporation did have this knowledge it is necessary to consider the facts which in plaintiffs' view created the relation of surety between them and the Hurleys, and the facts which the complaint brings home to the Corporation.

The complaint alleges that the plaintiffs, in pursuance of contracts of purchase of crops to be grown by the Hurleys, made advances to them aggregating $4,429.73, and that crops were delivered to the plaintiffs which they processed and sold (with the exception of 100 cases of beans) of the value of $3,854.34. These crops were received by the plaintiffs after the Hurleys had mortgaged them to the Corporation to secure a loan of $6,000.00. The Corporation sued to foreclose its mortgage, making the plaintiffs parties defendants, and a decree of foreclosure was entered. In the decree judgment was given against the Hurleys for the

balance due on the mortgage, $4,619.06, with interest at five per cent per annum from May 5, 1943, the date of the execution of the mortgage, and attorneys' fees, and against the plaintiffs for $1,909.99 with interest at the same rate from the same date. It is conceded by counsel for the Corporation that the judgment against the plaintiffs is a part of that against the Hurleys and that the Corporation is entitled to but one satisfaction of the larger amount. It is shown by recitals in the decree that the value of the crops delivered to the plaintiffs was $4,266.74 and that judgment was sought against them for that sum, but the Corporation authorized the plaintiffs to advance the sum of $2,356.75 to the Hurleys to assist in harvesting the crops and to that extent waived the lien of its mortgage. The judgment against the plaintiffs, therefore, represents the difference between the value, as found by the court, of the crops which they received, and the advances made in pursuance of the waiver agreement.

Thus, it appears the plaintiffs made advances to the Hurleys in the total sum of $4,429.73 and received from them property of the value of $4,266.74, which was encumbered by a mortgage for a larger sum, and that, as the final result of the transaction, judgment has been entered against the plaintiffs in favor of the mortgagee for $1,909.99 and interest. This judgment, plaintiffs say, is the primary obligation of the Hurleys. They put this contention upon several grounds. They urge that, as the Hurleys signed the mortgage, they are "absolutely required to pay the same", and that the liability of the plaintiffs, who did not sign it, is therefore secondary. They suggest, as the most logical basis of the liability over as between the Hurleys and the plaintiffs, the former's breach of the implied warranty

against encumbrances in delivering crops to the plaintiffs subject to the Corporation's mortgage. They argue that the plaintiffs and the Hurleys were joint tortfeasors (although the latter were not sued in tort), and that as such the plaintiffs would be entitled to contribution from the Hurleys for any payments the former might make on the judgment. They invoke the definition approved in *Hoffman v. Habighorst,* supra, that "a surety * * * is a person who, being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed before the surety was compelled to do so", and argue that in equity and good conscience they are entitled to be so indemnified.

Putting these contentions to one side for the moment, it may be fairly said that the facts which lie at the foundation of plaintiffs' claim to the position of sureties are that, as their complaint alleges, they have already paid to the Hurleys more than the value of the property received by them and that they have been subjected to a judgment which, if enforced, will result in their paying again for the same property, to the extent of the amount of that judgment, in order to satisfy a mortgage placed upon the property by the Hurleys to secure a loan of which the latter got the benefit. That this is so may be demonstrated by asking what the position of the plaintiffs would be if they had not already paid for the crops which they received. It would be that by paying this judgment they would merely pay the value of property which they received; that they would at the same time discharge any obligation to the Hurleys resting upon them; and, therefore, that they would have no occasion to ask for reimbursement from anyone.

The question then occurs—What knowledge, according to the complaint, did the Corporation have of these facts? It knew, of course, that the plaintiffs had received the mortgaged property, and knew about the advances made by the plaintiffs to the Hurleys in pursuance of the agreement of the Corporation to waive the lien of its mortgage. It had no knowledge otherwise. It knew nothing of the dealings between the plaintiffs and the Hurleys, of the terms of the contracts of purchase entered into by those parties, of the amount of money advanced by the plaintiffs pursuant to such contracts, or of the terms on which the crops were delivered to the plaintiffs. In short, it did not know, so far as anything in the complaint discloses, of the "arrangements and equities between the debtors or obligors."

We revert now to the legal theories suggested by counsel for the plaintiffs in support of their claim that they are sureties. It does not follow that because the Hurley's signed the mortgage they remained primarily liable on it after the transfer of the mortgaged goods to the plaintiffs. If the mortgage had been assumed by the plaintiffs they would have become principals and the Hurleys entitled to be treated as sureties. *Hurst v. Merrifield,* 144 Or. 78, 23 P. (2d) 124; Stearns on Suretyship (3d ed.) 24, § 23; *Gholson v. Savin,* 137 Oh. St. 551, 31 N. E. (2d) 858, 139 A. L. R. 75; *Smith v. Shelden,* 35 Mich. 42, 24 Am. Rep. 529; 1 Brandt, Suretyship and Guaranty (3d ed.) 7, § 1; 50 C. J., Principal and Surety, 26, § 34; Restatement, Security, § 83 (c) and (d). And, where property is transferred subject to a mortgage, "it is generally presumed that the amount of the mortgage has been deducted from and is a part of the purchase price. It is consequently frequently asserted that mortgaged property trans-

ferred subject to the mortgage is the primary source for the satisfaction of the mortgage. The ordinary significance of this statement is that as between the parties to the transfer, and to the extent of the grantee's interest in the property, the grantee is a principal and the grantor a surety." 37 Am. Jur., 381, § 1102. And see Restatement, Security, § 83 (c). As already pointed out, the complaint does not show that the Corporation knew the terms of the transfer of the mortgaged property, or that it was paid for at the time of the transfer, or at all (with the exception, of course, of the money advanced by the plaintiffs pursuant to their agreement with the Corporation and which is not included in the judgment against the plaintiffs). As we are not warranted in assuming that knowledge on the part of the Corporation, we have no right to say that it knew that a suretyship relation was created by the transfer of the mortgaged property, unless it was one under which the plaintiffs become the principal debtors and the Hurleys their sureties.

There is no room here for the application of the doctrine of implied warranty of title, for the decree affirmatively shows that the plaintiffs had constructive knowledge of the mortgage and, as they do not negative actual knowledge, it must be assumed that they had that as well. The implied warranty provided for by the statute on which counsel for plaintiffs rely in their brief applies only to incumbrances "not declared or known to the buyer before or at the time when the contract or sale is made", § 71-113, O. C. L. A. In any event, in the absence of allegations as to the terms and conditions of the sale, we are not justified in assuming the existence of such a warranty. See, 46 Am. Jur., Sales, 576, § 404.

■ Nor can it be said that the plaintiffs are entitled to contribution from the Hurleys on the theory that they were joint tortfeasors not *in pari delicto.* While the theory on which the plaintiffs were sued in the foreclosure suit does not definitely appear, either by the allegations of the complaint or the recitals in the decree, we think that we are warranted in accepting the statement of counsel for the plaintiffs in their brief that the plaintiffs were made defendants in that suit "on the theory of a conversion by (them) * * * of the interest of the mortgagee in said crops." At least, that is the only theory of their liability which is at all apparent. See, *Eade v. First National Bank of Condon,* 117 Or. 47, 242 P. 833, 43 A. L. R. 374. The Hurleys, however, were not sued in tort but for a foreclosure of their mortgage, and there is nothing in the complaint from which it can be deduced that they committed a tort. The authority on which counsel rely is the Restatement, Restitution, 401, § 91, which reads:

"If a person, representing that he has a power of disposition of land or chattels, has sold or leased them to another who relied upon such representation and thereby subjected both to liability in tort to a person entitled to the land or chattels, he is under a duty of indemnity to the other for expenditures properly made in the discharge of such liability.

* * * * *

"b. *Sale or lease of chattels.* Normally it is implicit in the sale or lease of a chattel that the seller represents that he has title or power to convey and the rule stated in this Section would be applicable. * * *"

The rule is said to apply "to cases where the transferor held title subject to a beneficial interest of another and hence could have made a conveyance to a

bona fide purchaser, but where the transferee although acting in good faith, becomes liable because he had been given a notification or negligently failed to ascertain facts." Ibid. 404 e. The Restatement further says: "The operation of the rule is dependent upon the payor's reliance in good faith upon the other's ownership or power of disposition." Ibid. 401 a. In view of the fact that, as already pointed out, the plaintiffs had constructive knowledge and do not negative actual knowledge of the mortgage, they cannot avail themselves of the rule invoked. Speculation about legal theories which may by possibility be some way involved cannot take the place of specific allegations of fact when the question arises upon a demurrer to the complaint.

From the foregoing analysis of the complaint and the contentions of counsel for the plaintiffs we deduce two conclusions: (1) That the relation of principal and surety is not disclosed by such of the facts alleged as were known to the Corporation; (2) that, if the relation exists at all, its existence depends upon facts which are not alleged to have been known by the Corporation at the time they released the execution levied upon property of the Hurleys. Those facts are that the plaintiffs have paid the Hurleys in full for the property they received and will be required to pay for it in part a second time if the Corporation's judgment should be enforced against them. In other words, if the plaintiffs were mere sureties for the Hurleys, the Corporation, so far as the complaint discloses, did not know it, and therefore was not required to respect the rights of the plaintiffs incident to that relation.

In view of these conclusions we do not reach the question whether the facts alleged, taken in their

entirety, show that a suretyship relation was created. That is an interesting and important question. It has been well but not as fully briefed as it might be. We express no opinion on it other than to say that we do not agree with the contention of the defendants that the question is concluded in their favor by the judgment. The rule is that parties to a judgment are not bound by it in subsequent controversies between each other where they are not adversaries in the action in which the judgment is rendered. The rule applies to a fact which might have been, but was not, litigated in the original action. 30 Am. Jur., Judgments, 966, § 233. It is further the rule that the relation of principal and surety is not terminated by reason of a judgment having been obtained against the principal and surety. 1 Brandt (3d ed.) 777, § 409, 343, § 167; 4 Williston on Contracts (Rev. ed.) 3594, § 1254; Pingry on Suretyship and Guaranty 71, § 64; 50 C. J., Principal and Surety, 189, § 314; *Gholson v. Savin,* supra; *Chambers v. Cochran,* 18 Iowa 159; *Commonwealth v. Vanderslice,* 8 Pa. 452; *Trotter v. Strong,* 63 Ill. 272; *Rice v. Morton,* 19 Mo. 263; 285; *Stolze v. U. S. Fidelity, etc., Co.,* 153 Mo. App. 29, 131 S. W. 915; *Dunham v. Downer,* 31 Vt. 249, 263; *Drexel v. Pusey,* 57 Neb. 30, 77 N. W. 351. There is nothing on the face of the complaint to indicate that the plaintiffs and the Hurleys litigated in the foreclosure suit the question of the order of their liability. Neither do the recitals in the decree disclose that that question was determined.

For the reasons herein stated the court below did not err in sustaining the demurrer to the complaint and the decree must be affirmed.