Argued 24 April; decided 14 July, 1902.

## HUGHES v. LADD.

[69 Pac. 548.]

NAME OF PRINCIPAL IN NOTE—SURETY.

1. It is not necessary that the name of the real principal appear in a note or obligation on which the actual signer is claimed to be only a surety, but the real relationship may be shown, as between the parties involved. The present case affords an illustration of this: A corporation authorized its finance committee to borrow money for the use of the corporation, and to give the notes of the corporation therefor. Money was borrowed and used for corporate purposes, but the lender insisted that the personal notes of the members of the committee be given, instead of the note of the corporation. This was done and the members of the committee credited with the amount of the loan, it being evident that this was a bookkeeping device intended to preserve the history of the transaction. All parties, however, regarded the corporation as primarily liable directly to the lender, and not to the members of the committee; and the latter took no security or evidence of indebtedness from the corporation, and the corporation made payments to the holder of some of the notes. *Held,* that the corporation was a principal as to the notes given by the committee, and the signers thereof were sureties.

PRINCIPAL AND SURETY—WHO ARE PRINCIPALS.

2. The individual members of the finance committee of a corporation became sureties on certain notes given by the corporation for borrowed money. These being overdue and unpaid, were purchased by one of the committeemen. Subsequently the corporation borrowed more money, giving notes signed by the same committeemen as sureties. A part of this money was used to pay interest on the said notes theretofore purchased by one of the committeemen. *Held,* that as the payment of the interest was a transaction entirely separate and apart from that of borrowing the money, the holder of the note received no benefit from the borrowing of the money, and so was not thereby rendered a principal on the last note.

IDEM.

3. The individual members of a finance committee of a corporation became sureties on the corporation's note for borrowed money, a part of which was used to pay overdue taxes on a building which was the only property of the corporation, the mortgagee having threatened to foreclose if the taxes were not paid. One of the members of the finance committee held sundry unpaid notes of the corporation. *Held,* that the benefit arising from the fact that by payment of the taxes the corporation was left in possession of its property, and therefore more liable to pay its debts, accrued to each stockholder and surety, and was not peculiar to the one who held the notes of the corporation, so as to make him a principal on the note.

From Multnomah: JOHN B. CLELAND, ALFRED F. SEARS, JR., and MELVIN C. GEORGE, Judges, in joint session.

Suit by Ellis G. Hughes against Charles E. Ladd and another. From a decree for defendants, plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the name of *R. & E. B. Williams,* with an oral argument by *Mr. Ellis G. Hughes, in pro. per.,* and *Mr. Richard Williams.*

For respondents there was a brief over the name of *Williams, Wood & Linthicum,* with an oral argument by *Mr. George H. Williams* and *Mr. Stewart B. Linthicum.*

PER CURIAM. This is a suit by Ellis G. Hughes to compel Charles E. Ladd to pay and discharge two certain promissory notes, one of which was executed by Hughes, Ladd, and other persons, composing the finance committee of the Chamber of Commerce, as joint makers, and the other by the Chamber of Commerce; the payment of the latter being guarantied by the members of the finance committee. The controversy grows out of transactions connected with the erection of the Chamber of Commerce building, a statement of which will be found in the cases of *Hughes* v. *Pratt,* 37 Or. 45 (60 Pac. 707), and *Ladd* v. *Chamber of Commerce,* 37 Or. 49 (60 Pac. 713, 61 Pac. 1127, 62 Pac. 208). The two notes here involved are referred to as the Green and Breck notes. The contention of Hughes is that, as between the parties to the notes, he is a surety, and is entitled to have Ladd, as principal, exonerate him by paying the obligations. We find no basis for such a contention in the record, but deem it unnecessary to state at length the reasons for our conclusion. The case was tried before the judges of the circuit court of Multnomah County, sitting in *banc,* and an elaborate and carefully prepared opinion, covering the whole ground, was filed by Judge Cleland, in behalf of himself and associates, with the reasonings and conclusions of which we are entirely satisfied. It would be useless labor, therefore, for us to go over the same matters again. It is sufficient to say that, after an examination of the record, we are all agreed that the decree should be affirmed.          AFFIRMED.

The following is the opinion of the court below (CLELAND, P. J.)*

1. "It becomes important to ascertain the relation of defendant Ladd to the Chamber of Commerce, arising out of the making of the notes the plaintiff did not sign. When it was decided loans to the amount of $220,000 were necessary, the proper committee was directed and authorized to make the notes of the Chamber of Commerce in convenient amounts, and it was understood these notes were also to be signed by the members of the finance committee. The subcommittee, however, was given power to act. If the arrangement had been completed as designed by the Chamber of Commerce, it would have been in fact and in law the principal, and the members of the finance committee sureties. When the subcommittee applied for the accommodation another form of note was required by the bank. This was a note signed by the members of the finance committee, omitting the Chamber of Commerce from the list of makers. The conditions insisted upon by the bank were by the committee submitted to and ratified by the Chamber of Commerce. The manner of closing the loan was fully understood by the Chamber of Commerce, the money paid to its treasurer, and disbursed by it through warrants in the manner in which the by-laws required its business to be transacted. After the first note was made, the plan then adopted to secure the money seems to have been followed in all other cases wherein notes were given in and about the completion of the building, except twenty-eight notes hereafter to be mentioned. In two particulars only do the transactions under consideration differ from the ordinary case where a principal signs a note, receives the consideration therefor, and others sign as sureties, and do not receive any part of the consideration. One of these is the omission of the name of the principal from the note. This omission did not occur through the act, wish, or design of the principal or sureties, but because of the suggestion of the payee

---

*By direction of the court this opinion is included in the official volume.
——REPORTER.

in the note. This circumstance in itself is not sufficient to change the character of the transaction, and render the signers on the note, as between themselves and the Chamber of Commerce, principals, when otherwise they would have been sureties only. The other particular is that, after the money secured through the loans was paid to the treasurer of the corporation, the books were kept in such a manner as to indicate a credit in favor of the group of persons who signed the notes, and a charge against the corporation.

''In this connection it is important to inquire if the parties to this case, or either of them, are entitled to rely upon any implication or inference which might be drawn from these entries. It does not appear that either plaintiff or defendant Ladd, in making the notes which are the subject of this suit, were in any way influenced by such entries. The history of the transactions out of which these entries arose was familiar to each of them, and neither could have been, in fact, misled or deceived, because the entries were so made. The corporation was neither misled, deceived, nor ignorant in respect thereto. The fact of these entries was reported to the corporation, and it resolved the entries should not be allowed to stand, since the same were misleading. There was only one respect in which the entries could have been wrong, viz., in that they represented a direct loan of money by the persons given the credit, instead of the fact these persons were sureties and the indebtedness was in fact that of the Chamber of Commerce. The correspondence of the plaintiff with one of the finance committee while the former was in Europe shows that he understood the true relations of the parties. Against the evidence afforded by these entries that the transaction was in fact a series of loans made by the group of persons who signed the notes to the Chamber of Commerce, many circumstances must be considered. The men who signed the notes were and are among the very best business men in the state, and yet, if these were loans, they failed to take any evidence thereof by note or otherwise, to fix any time of repayment or rate of interest, and, what is more remarkable, in view of the amounts involved,

seem never to have considered the question of security. All
the money borrowed was by the Chamber of Commerce received
and used by it to complete its building and pay its indebted-
ness. The corporation still retains title to the property. It was
in possession and received the rents and profits until its control
was terminated by the appointment of a receiver. There is no
evidence of any agreement to turn the property over to defend-
ant Ladd, or any one, for any purpose. That the plaintiff un-
derstood the situation and ownership of the corporate property
is made certain by his letter to W. M. and C. E. Ladd in 1896,
and there is no evidence that the Chamber of Commerce has
conveyed or attempted to convey its property since that letter
was written. The twenty-eight notes were given directly to per-
sons and corporations to whom the Chamber of Commerce was
indebted for and on account of the erection of its building.
These were debts for which it was primarily liable, and this
fact was distinctly recognized by the corporation. In *Hoffman*
v. *Habighorst,* 38 Or. 261 (63 Pac. 612, 53 L. R. A. 908), the
Supreme Court approves this statement of the law: 'Now, a
surety, as we understand it, is a person who, being liable to pay
a debt or perform an obligation, is entitled, if it is enforced
against him, to be indemnified by some other person who ought
himself to have made payment or performance before the
surety was compelled to do so.' The Chamber of Commerce
understood its duty in the premises when it paid $20,000 of the
New York Life Insurance Company money, in two equal pay-
ments, on two of the earlier notes, upon which its name did not
appear as maker. In the same case the Supreme Court ap-
proves a statement of the law as follows: 'The relation of sure-
tyship grows out of the assumption of a liability at the request
of another and for his benefit. It may consequently arise,
although the name of the principal does not appear in the
instrument which constitutes the evidence of the debt.' Under
this rule the facts fix the notes under consideration as the pri-
mary obligation of the Chamber of Commerce, notwithstand-
ing the entries made on the corporation books.

''The court is confirmed in this view by a careful considera-

tion of the entries. The first transaction was entered on the journal (page 8) as follows:

Chamber of Commerce, Feb. 8, 1892.

Bank of British Columbia_____$50,000

To the individual members of the finance commit-
tee of the Chamber of Commerce, for a loan
effected by the committee for the use of the Cham-
ber of Commerce, dated February 1, 1892, paya-
ble six months from date, with interest at 7½ per
cent per annum, upon which the individual mem-
bers of the finance committee are liable, and the
Chamber of Commerce liable to them_____ 50,000

"The entries of all other transactions prior to the Green loan are substantially in the same form. The Green matter is entered on the journal (page 73) as follows:

Chamber of Commerce, March, 1895.

J. L. Hartman, treasurer R. E. fund_____$20,000

To individual members of finance committee_____ 20,000

Of Chamber of Commerce for proceeds of note
of the committee to John Green, dated March
15, 1895, payable one year from date, with inter-
est at 7 per cent per annum. Given in payment
of outstanding obligations of the Chamber of
Commerce, and for which the Chamber of Com-
merce is liable to them.

"The Breck matter is entered on the journal (page 134):

Chamber of Commerce, December 31, 1896.

J. L. Hartman, treasnrer R. E. fund_____$ 5,500

To individual members finance committee_____ 5,500

For note of individual members finance commit-
tee given Anna Breck, dated January 19, 1897,
payable in one year, with interest at 7 per cent
per annum.

"These entries, with those showing the Chamber of Commerce from time to time paid the interest as interest on these notes, lead the court to believe the entries are no more than a bookkeeper's device to keep up the history of the business, and in fact the indebtedness was treated and deemed to be that of the Chamber of Commerce.

"But if the case is considered from the plaintiff's position, the result is not advantageous to him. The plaintiff's contention is stated as follows: 'The Chamber of Commerce, lacking funds to pay certain claims accruing on account of construction, these gentlemen, with the exception of the plaintiff, supposing themselves to be liable as sureties for the Chamber of Commerce for the payment of these claims, from time to time borrowed money on their individual notes, which, when borrowed, they turned over to the Chamber of Commerce, charging the Chamber, and crediting themselves with the amount in its books of account, which were kept by them or under their direction and control. * * This transaction appears to be a very plain one. When these gentlemen borrowed this money on their individual notes, it was certainly theirs when they loaned it to the Chamber. Assuming the transaction to be perfectly fair, the Chamber certainly became indebted to them for the amount. * * These notes were in their inception, and remained, the notes of the individual makers. * * If they advanced the money to the Chamber, the debt was of the Chamber to them, just as they made it appear by the entries in its books; just as it would have been without these entries.' If the notes to the Bank of British Columbia, etc., are to be deemed those of the individual makers, then it follows, since there was no difference in the relations of the makers to each other, to the Chamber of Commerce, or the bank, that they were joint makers of the notes, and the law applicable to principal and surety has no application. The persons, then, who signed the notes were joint makers; and the Chamber of Commerce, having borrowed the money from them, was their creditor upon open account. In this state of affairs, the makers of the notes to the Bank of British Columbia, etc., and the plaintiff borrowed $20,000 on their individual note from John Green, which, when borrowed, they turned over to the Chamber of Commerce, charging the Chamber, and crediting themselves with the amount in its books of account, which were being kept by them, or under their direction and control. When they borrowed this money on their individual notes, it

was certainly theirs. When they loaned it to the Chamber, the Chamber certainly became indebted to them for the amount. The fact that the makers of the notes to the Bank of British Columbia had already borrowed money and loaned it to the Chamber of Commerce did not and could not change their relations to each other or to the plaintiff. If the note to Green is deemed that of the persons who signed it as individual makers, then it follows, since there was no difference in the relations of the makers to each other, to the Chamber of Commerce, or to John Green, that they were and are joint makers of the note, and the law of principal and surety has no application. The plaintiff is not entitled to the relief prayed for, nor to any relief as to the John Green note, and, conceding plaintiff's claim that the Breck note stands upon the same footing as the Green note, he is not entitled to relief as to that note.

"If, however, the view of the court is the correct one, it becomes necessary to further consider the facts in the case. Among the notes outstanding March 15, 1895, the date of the Green note, upon which, in equity, the Chamber of Commerce was the principal debtor, and defendant Ladd a surety, were the twenty-eight notes already particularly mentioned, aggregating about $60,000, one note to Donald Macleay for $10,000, and one to Kenneth Macleay for $5,000. The $20,000 represented by the Green note was paid in to the corporation treasury, and disbursed for corporation purposes. Therefore, as between the signers and the Chamber of Commerce, the latter is the principal, and the former sureties. The relation of plaintiff and defendant Ladd to each other remains to be considered. The minutes of the meeting of the finance committee show the transaction to have been one of the corporation, conducted in the usual manner. The persons present in the meeting were regular members of the committee, and empowered to act for the corporation. Acting in that capacity, the committee negotiated a loan for the Chamber of Commerce for the purpose of paying certain indebtedness of the Chamber of Commerce, then due and pressing. The taxes assessed upon the corporate property constituted the indebtedness of the Cham-

ber of Commerce, and the notes of Donald Macleay, Kenneth Macleay, the twenty-eight notes mentioned, were, as we have seen, indebtedness of the Chamber of Commerce, and presently due. It was competent for the Chamber of Commerce to pay any of its indebtedness then outstanding, so far as it had or could procure the means so to do. If it retired any indebtedness upon which persons had signed as sureties, such persons would of necessity be released from liability so far as payment was made. The act of the principal would thus exonerate the sureties, and any surety can rely upon the act and transaction of the principal unless precluded from so doing by his own fraud or misconduct. No circumstances appear from the evidence tending to show plaintiff was misled or in any manner deceived by defendant Ladd or by any one at the time he became a signer of the Green note. At the committee meeting March 15, 1895, all persons assembled assumed to be acting, as it was their official duty to act, for the Chamber of Commerce; and there is no testimony in the case to support the contention that the members of the committee were deliberately violating their trust, and acting for their personal, private interest. Nothing was said at the meeting from which such an inference can be drawn. No representation was made to any one at any time that this money, when borrowed, was not to be placed in the treasury of the corporation; nor was there any representation that the money, when in the corporate treasury, was to be disposed of otherwise than in the manner provided in the by-laws for the transaction of corporate business. No other method was in fact adopted. The plaintiff did not disclose to the other persons acting with him in the committee the difference, if any, between his position and theirs with respect to the indebtedness of the Chamber of Commerce. The others made no statement to him inconsistent with the prompt and orderly transaction of the business for which they were assembled. It does not appear from the evidence that the ultimate disposition of the money borrowed was a condition precedent to plaintiff's signature on the note. It must, in the present state of the record, be conclusively presumed that plaintiff signed the note

to the end that the money should be paid into the corporation treasury, and then be disbursed according to the by-laws.

2. "After he borrowed the money and certain collections of rent, etc., had accumulated in the hands of the treasurer of the Chamber of Commerce, through a warrant drawn by authority of the Chamber of Commerce $5,000 was paid defendant Ladd, and by him applied to the payment of interest due on the said twenty-eight notes. It is contended this $5,000 was part of the money secured by the Green loan, and by receiving the same defendant Ladd was benefited; that plaintiff received no payment, and therefore was not benefited; that in consequence defendant Ladd is, in law, a principal on the Green note, as to plaintiff. Defendant Ladd did not receive any of the Green loan through the execution of the contract to which plaintiff and defendant Ladd were parties. That transaction was completed when the note was made and delivered, and the money therefor received. At the completion of the contract, John Green had the note, which in equity is that of the Chamber of Commerce as principal, and the group of persons who signed it are sureties; and the Chamber of Commerce had the money represented by the face of the note, viz., $20,000. No benefit had passed to any of the sureties on the note. The claim is that because the principal elected, after receiving the money, to pay part of a debt justly due and owing to defendant Ladd, the payment, under the circumstances, must be deemed a benefit derived through and by means of the original contract, that is, the note. Defendant Ladd did not receive the money paid to him by the warrant because of the making of the note to Green, but because he gave, as consideration for the money represented by the warrant, credit upon notes in equity the indebtedness of the Chamber of Commerce to defendant Ladd. Such a transaction does not fall within the principle of the authorities citied and relied upon by plaintiff. Plaintiff, when he signed the Green note, may or may not have believed that, by reason of the bond to the New York Life Insurance Company, he was liable as a surety for the full amount of the indebtedness then outstanding, for which the persons who

signed as cosureties with him were in fact liable. That is now
immaterial. The Supreme Court, in *Ladd* v. *Chamber of Com-
merce*, 37 Or. 49 (60 Pac. 713, 61 Pac. 1127, 62 Pac. 208), has
decided plaintiff is not liable upon any note he did not sign.
Unless it be made to appear that by means of the Green note,
without other consideration, defendant Ladd obtained a ben-
efit, it is immaterial to plaintiff in the present suit what the
Chamber of Commerce did with the money it obtained from
John Green. Suppose, for example, it had purchased property
from defendant Ladd with some or all of the Green money; it
could not be successfully contended such a transaction should
be held to constitute a benefit to defendant Ladd, or warrant
the conclusion that thereby defendant Ladd became a principal
as to plaintiff. Yet it could be said in a certain sense, in such
a case, defendant Ladd received a benefit, because the Cham-
ber of Commerce might have been unable to buy if the loan
had not been secured, and it may be assumed the seller would
gain a profit on the sale. The Breck note was made by the
Chamber of Commerce, and the money received therefor deliv-
ered to the treasurer of the corporation and disbursed by the
Chamber of Commerce. It was used to pay taxes assessed
against its property and then due. The obligation was, within
the rule stated, in equity, that of the Chamber of Commerce,
as principal, and the other signers were its sureties.

3. "It is contended defendant Ladd was benefited by the
payment of the taxes, and the plaintiff was not benefited, be-
cause, if the taxes were not paid, the New York Life Insurance
Company would, if the taxes remained unpaid, foreclose the
first mortgage on the corporate property, and thereby defend-
ant Ladd would be deprived of all opportunity to collect any
part of the money due him, because the Chamber of Commerce
possessed no property except that covered by the mortgage.
The evidence does not show that defendant Ladd either directly
or indirectly received one dollar or any benefit from the Cham-
ber of Commerce as a result of the payment of the taxes with
the Breck money. If, however, it be contended, the benefit con-
sists in the fact that the debtor was left in possession of its

property not foreclosed, and therefore presumably more likely to pay its debts, and save its property ultimately for the benefit of its general creditors, then each person who was at the time a creditor or stockholder, and every person who might become liable as surety for the corporation, was interested and presumably benefited. They might not be in fact equally benefited, but the law draws no distinction between beneficiaries. Plaintiff and defendant Ladd are stockholders in the Chamber of Commerce. Both are signers on the Green note, outstanding when the Breck note was made. The plaintiff cannot, for these reasons, assert that defendant Ladd is as to him a principal on the Breck note. But aside from these considerations, the court believes, where it appears the principal received the borrowed money, and neither of the sureties received any part of it, the inquiry is ended, and the liability of the sureties fixed and established.

"Let findings and decree be entered for defendants. All concur." AFFIRMED.

Decided 20 October; rehearing denied 8 December, 1902.