[Sac. No. 1651. In Bank.—March 14, 1911.]

WILLIAMSON FINNELL, Respondent, v. JOHN FINNELL, JR., as Administrator of the Estate of John Finnell, Deceased, and THE FINNELL LAND COMPANY, Appellants.

VENDOR'S LIEN—FORECLOSURE AGAINST GRANTEE OF VENDEE—JUDGMENT OF VENDOR AGAINST VENDEE—SUBROGATION—ENFORCEMENT OF JUDGMENT BY GRANTEE.—Where a vendor has foreclosed a lien for unpaid purchase money against a land company which was the grantee of the vendee, and has also obtained a personal judgment for the full amount of his debt with interest against his vendee, and the foreclosure has been affirmed against such grantee, and it appears that the grantee had not assumed payment of the vendee's obligation to the vendor, such grantee is entitled to be subrogated in equity to the judgment against the vendee, and to enforce payment thereof out of his estate against his administrator.

ID.—RULES OF EQUITY—PAYMENT OF ANOTHER'S DEBT—PRINCIPAL AND SURETY—ENFORCEMENT—SUBROGATION.—It is an equitable doctrine that one who is compelled to pay another's debt, or whose property is made liable for a debt which another in good conscience ought to pay, is entitled to recover against that other the amount so paid. Where one who is in effect a surety for a principal debtor and whose land is bound by a lien which such debtor ought to pay, and which the surety must pay, the surety is entitled to be subrogated in equity to a judgment against such principal debtor in favor of the lien-holder for the same amount as that of the lien.

ID.—RULE IN EQUITY AS TO SUBSTANCE CONTROLLING FORM.—Where one who is not nominally a surety, but is virtually such, the rule applies that equity regards the substance rather than the form; and where the same injurious consequences would follow in case of a virtual surety that would follow in the case of an express surety who is compelled to pay the debt of the principal, equity will accord the same rights to a virtual surety as to an express surety in such case.

ID.—ENFORCEMENT OF SUBROGATION BY CROSS-COMPLAINT IN SUIT FOR FORECLOSURE OF LIEN—JUDGMENT BY DEFAULT AGAINST PRINCIPAL DEBTOR.—Where in the suit to foreclose the vendor's lien against the land company as grantee of the vendee, the vendee made default and judgment by default was rendered against him for the full amount of the debt, and the lien was fully established against the land company, it is held that the land company may by cross-complaint in the equity suit seek subrogation for the amount of the debt against the vendee, and enforce the same against his administrator, to be paid out of the estate of the deceased vendee.

ID.—EXPRESS AUTHORITY OF STATUTE FOR CROSS-COMPLAINT NOT REQUIRED.—It is not essential that there should be express statutory authority for such cross-complaint. The right asserted is an equitable right arising out of the transaction which was involved in the suit as instituted; and a court of equity is governed by the rule which forbids the settlement of controversies by piecemeal, and the course pursued is not without precedent and was justified by considerations of convenience and economy; and the decree of subrogation imposes no burden upon the estate of the decedent greater than the land company is entitled to.

APPEAL from a judgment of the Superior Court of Tehama County and from an order denying a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

Charles W. Slack, and Walter Perry Johnson, for John Finnell, Jr., Administrator, Appellant.

Garret W. McEnerney, for Finnell Land Company, Appellant and Respondent.

Theodore A. Bell, and York & Bell, for Plaintiff Respondent.

BEATTY, C. J.—On the eighteenth day of October, 1890, Williamson Finnell, the plaintiff in this action, sold and conveyed to his father, John Finnell, 4,250 acres of land. The whole purchase price of the land was $127,500.00, of which sum $35,500.00 were paid at the date of the conveyance. For the balance of ninety-two thousand dollars the plaintiff accepted his father's promissory note, payable on or before October 15, 1900, without other security than his vendor's lien on the land. On the twenty-fourth day of May, 1900, John Finnell organized the defendant, the Finnell Land Company, a corporation with a nominal capital of six hundred and fifty thousand dollars, divided into 6,500 shares, and on the 28th of the same month proposed in writing to convey to said corporation, free of all encumbrances, said 4,250 acres of land purchased from the plaintiff, together with a large body of other lands, in consideration of the issuance of fully paid shares of its stock as follows:—

| | |
|---|---|
| To John Finnell, Jr. | 10 Shares. |
| To James Finnell | 10 Shares. |
| To Simpson Finnell | 10 Shares. |
| To Bush Finnell | 10 Shares. |
| To Geo. E. Goodman | 2,000 Shares. |
| To John Finnell | 4,460 Shares. |

This offer was accepted by the corporation and John Finnell executed and delivered to the corporation his grant, bargain, and sale deed of said lands. All the members of the corporation knew at the time of this transaction that the purchase-money note for ninety-two thousand dollars for said 4,250 acres of land and some accrued interest, was unpaid, but they seem not to have been advised that in law it was secured by a vendor's lien upon the land.

This action was commenced by Williamson Finnell October 14, 1900, against his father, to recover the principal and interest of his note for ninety-two thousand dollars, and against the land company to foreclose his vendor's lien. His father

defaulted—allowing judgment to go against him for the amount of the note and accrued interest. The land company answered contesting the indebtedness and claim of lien, and by cross-bill prayed that in the event judgment should be recovered against John Finnell and the land found subject to the asserted lien and sold to satisfy the judgment, it might be subrogated as a judgment creditor of John Finnell. John Finnell died after the cross-complaint was filed, and his son and administrator, John Finnell, Jr., was substituted in his place. Supplemental and amended pleadings were filed, but these made no material change in the attitude and claims of the parties.

The cause was tried by the court and findings and conclusions filed in favor of the plaintiff against John Finnell, Jr., and the land company, and in favor of the land company against John Finnell, Jr., as administrator of his father's estate. It was decreed that the aggregate amount of the judgment against John Finnell, Jr., was a lien upon the land sold by plaintiff to John Finnell, and in the event that the land should be sold, that the land company be instated and subrogated as a judgment creditor of John Finnell, Jr., as administrator of John Finnell, for the amount for which the land might be sold, and that if the land company should pay the judgment before a sale of the land then said company should be entitled to the benefit of the judgment and to repayment by John Finnell, Jr., as administrator of the estate of his father, in due course of administration, of the money which might be so paid.

From this decree the land company and John Finnell, Jr., took separate appeals. On the appeal of the land company the judgment in favor of the plaintiff has been affirmed. (*Finnell v. Finnell,* 156 Cal. 589, [134 Am. St. Rep. 143, 105 Pac. 740].) This is the appeal of John Finnell, Jr., from that portion of the decree in favor of the land company, and from the order denying his motion for a new trial. The appellant makes no question as to the facts found by the trial judge, and only contends, in support of his appeal from the judgment, that the cross-complaint of the land company does not state facts sufficient to constitute a cause of action, or if it does, that such cause of action is shown to have been barred by the statute of limitations. In support of this contention

he bases his argument upon the mistaken assumption that respondent's action rests for its support upon the implied covenant of John Finnell against encumbrances. This, the respondent shows, is not the theory of its case. It relies upon the offer of John Finnell to convey the land free of all encumbrances, and his deed of grant, bargain, and sale executed in conformity to his offer and its acceptance, only for the purpose of showing that in the purchase of the land it did not assume the indebtedness of John Finnell to his grantor— for the purpose, in other words, of showing that by the decree its land is to be sold, not for the satisfaction of its debt, but for the discharge of an obligation resting primarily upon John Finnell, and as to which it is virtually a surety and nothing more. Upon this ground, and upon this ground alone, it invokes the benefit of the equitable doctrine that one who is compelled to pay a debt, or whose property is made liable for a debt, which another in good conscience ought to pay, is entitled to recover against that other the amount so paid. The soundness of this doctrine has been upheld by innumerable decisions of courts of the highest authority in many jurisdictions, and it is so obviously just and reasonable that it is matter of wonder that it should ever have been called in question. It was applied in this state in favor of the vendee of a mortgagor, suing to recover from the mortgagee the tax on his interest in the mortgaged premises, which the plaintiff had been compelled to pay to prevent a sale of the land—(*San Gabriel Co.* v. *Witmer,* 96 Cal. 635, [18 L. R. A. 465, 29 Pac. 502]), where *"the well-settled rule"* is stated in these terms: "Where the plaintiff, either by compulsion of law, or to relieve himself from liability, or to save himself from damage, has paid money, not officiously, which the defendant ought to have paid, a count in *assumpsit* will be supported." A rehearing was granted in that case—not because any doubt was entertained by any member of the court as to this rule of equity, or of the soundness of the principle upon which it rests, but solely because the court desired to give fuller consideration to the question whether the remedy placed by the constitution in the hands of the mortgagor himself for the failure of the mortagee to pay the tax on the mortgage interest was not exclusive of a right of action based upon the equitable doctrine embodied in the rule quoted. After the rehear-

ing a majority of the court adhered to the original opinion, and a careful reading of the several dissenting opinions will show that the dissent was based entirely upon the ground that the constitutional remedy should be deemed exclusive. Aside from this consideration affecting that particular class of cases the equitable rule was expressly approved by six of the seven justices and not questioned by the seventh. Indeed, there is no question raised by the appellant here as to the terms or meaning of the rule. He only contends that this case is not within its terms or meaning. We think, however, that the rule is clearly applicable. That John Finnell was indebted to Williamson Finnell in the amount unpaid of his ninety-two thousand-dollar note is indisputable. He confessed the indebtedness by his default, and aside from his confession the case was clear. He received from the land company the agreed value of the land free from encumbrance; the company did not assume the indebtedness, and in equity and good conscience, as between him and the company it was his duty to pay it. Upon his failure to do so, the company, for its own protection, is compelled to pay. It is not nominally his surety, but virtually it is. Any failure by it to pay the debt will be followed by the same injurious consequences that are incurred by one who has made himself surety for another by express agreement, and equity which regards substance rather than form will accord it the same rights that accrue to a surety who is made to pay the debt of his principal.

In respondent's brief a large number of cases are cited in support of these principles, but we do not deem it necessary to pass them in review, or even to cite more than the following: *Arnold* v. *Green,* 116 N. Y. 566, [23 N. E. 1]; *Hazle* v. *Bondy,* 173 Ill. 302, [50 N. E. 671]; *Hoke* v. *Jones,* 33 W. Va. 501, [10 S. E. 775]; *Nixon* v. *Julian,* 72 Miss. 570, [18 South. 366]. It is clear, we think, that the land company, if it pays the debt of John Finnell, is entitled to be subrogated to the rights of Williamson Finnell to enforce payment of the note.

The only remaining question is whether the relief demanded by the cross-complaint, and awarded by the court, can be decreed in this action. The objection to the procedure adopted by the respondent is that it is unauthorized by any provision of our code. Respondent contends that, if it is not authorized by section 709 of the Code of Civil Procedure, the case is so

closely analogous to the case there provided for that it ought to be governed by the same rule. If express statutory authority were needed to sustain the decree in favor of the land company it might be difficult to find such authority in the section referred to—but such express authority does not seem to be essential. The right asserted by the respondent is an equitable right arising out of the transaction which was involved in the suit as instituted. The parties were all before the court—and that a court of equity governed by the rule which forbids the settlement of controversies by piecemeal. The course pursued was not without precedent, and was amply justified by considerations of convenience and economy. The decree of subrogation imposes no burden upon the appellant other or greater than he is justly subject to.

The decree in favor of respondent, and the order denying appellant's motion for a new trial are affirmed.

Angellotti, J., Shaw, J., Sloss, J., Henshaw, J., and Lorigan, J., concurred.