[Civ. No. 4663. Third Appellate District.—December 28, 1932.]

MILLER & LUX, INC. (a Corporation), Respondent, v. HUGH SPARKMAN, Appellant.

Conley, Conley & Conley for Appellant.

J. E. Woolley and Vincent J. McGovern for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendant for the sum of $915.01, based on an action to recover that sum on account of taxes paid by the plaintiff, which the complaint alleges should have been paid by the defendant.

On the fifteenth day of February, 1927, the plaintiff and the defendant entered into an agreement of purchase and sale, whereby the plaintiff agreed to sell to the defendant, and the defendant agreed to buy from the plaintiff all that certain tract of land situate and being in the county of Madera, state of California, described as follows, to wit: All of section 7, township 12 south, range 17 east, M. D. B. & M. Purchase price being the sum of $54,983. The agreement contained a number of covenants and provisions relative to the payment of the purchase price, and other conditions to be performed by the respective parties, only one of which need be set forth herein, as found in the fifth paragraph of the agreement, to wit: ''The seller shall pay the taxes on said property for the portion of the fiscal year,

up to the date of this agreement, and the purchaser shall pay the taxes for the balance of this fiscal year. All taxes and all assessments hereafter levied or becoming due upon said land by irrigation, reclamation, drainage, water storage or other district or public corporation shall be paid by the purchaser. The seller may pay the said taxes or assessments, and insurance, if hereinafter provided for, on behalf of the purchaser, and the same shall become immediately due from the purchaser to the seller, together with interest at the rate of 6 per cent per annum from the date of payment by the seller until repaid, and said seller shall have a lien upon any interest of said purchaser in said land, for the money paid by it for said insurance, taxes or assessments, together with said interest thereon.''

The agreement further provided that upon compliance with the conditions specified therein to be performed by the purchaser, the seller would execute and deliver to the purchaser a good and sufficient deed of conveyance, free and clear of all encumbrances, done or suffered by the seller, excepting all taxes, assessments, charges, etc., required to be paid by the purchaser. The agreement called for the payment of $10,978.60, upon the execution thereof, and the balance in six equal installments, payable on the fifteenth day of February of each succeeding year. On the eighteenth day of February, 1928, the defendant wrote to the plaintiff as follows (omitting the address): ''Please send deed to me, to Section 7–12–17, Madera County, on which I have a contract to purchase, with instructions to Security Title Insurance & Guaranty Company, of Madera. I am getting a loan to pay you off, and they ask Title Insurance, so please instruct Title Insurance to furnish same. Give as much time as possible for closing, as the loan is a government loan, and they sometimes are slow in getting papers ready, but loan has been approved and will be closed as soon as possible.''

The second letter written by the defendant to the plaintiff bears date of February 23, 1928, and is as follows (omitting address): ''Yours received with regard to my request for deed for Section 7–12–17, to be sent to the Security Title Insurance & Guaranty Company of Madera with your instructions. I will order the Title insurance and you pay toward that what the certificate would be, and I will pay the difference. You send the deed, and you can make it

clear to the Title Company that you will be responsible only for cost of certificate, and then only if deal is consummated. I am not getting all the money from the Land Bank, but have to put in part of my own, which I am ready to do. I hope this will be satisfactory.''

In pursuance of these letters the plaintiff sent instructions to the Security Title Insurance & Guaranty Company, setting forth the amount of money still due, and directing the insurance company to deliver to the defendant an inclosed grant, bargain and sale deed executed by the plaintiff to the defendant conveying to the defendant the premises covered by the agreement of purchase and sale heretofore referred to. The deed bears date as of February 23, 1928, and was delivered to the Security Title Insurance & Guaranty Company on February 25, 1928. This deed, among other provisions, contained the following: ''To have and to hold the said premises, together with the appurtenances unto the said party of the second part, and to his heirs and assigns forever, subject, however, to the lien of taxes for the fiscal year ending June 30, 1928, and to all assessments, if any, heretofore levied or assessed by any irrigation, reclamation or other district.''

The complaint sets forth that the defendant not having paid the taxes which became due and payable upon said granted premises, prior to the fifth day of December, 1928, the plaintiff, on the fourteenth day of December, 1928, paid the taxes then due and payable on said granted premises in the sum of $915.01. Demand was thereafter made by the plaintiff upon the defendant for repayment of said sum, and following the refusal to make such repayment, this action was begun.

Upon this appeal the defendant urges two grounds for reversal: First, That the payment of said taxes on the part of the plaintiff was purely voluntary; second, That the agreement which obligated the defendant to pay the taxes upon the granted premises was merged into, and ceased to be effective upon the execution of the grant, bargain and sale deed. That the grant, bargain and sale deed was delivered into the possession of the defendant on the twenty-third day of March, 1928, and by virtue of section 1113 of the Civil Code the plaintiff, by reason of the covenants contained in the deed, was obligated to pay the taxes, and the

defendant was relieved from the payment of taxes which accrued and became payable prior to the fifth day of December, 1928.

Was the payment of the taxes referred to voluntary on the part of the plaintiff? A large number of cases have been cited by the appellant all holding that voluntary payments made without request are not recoverable. Without questioning the correctness of a single one of the cases cited by the appellant, a reference to the Political Code will show their inapplicability. After providing that all taxes shall be levied upon property standing in the name of any person, the Political Code provides in section 3718 that all taxes levied for the following year become a lien as and of the first Monday of the year during which the taxes are levied. Other sections of the code setting forth the procedure require the levy of the taxes to be made in the month of September.

By section 3899 of the Political Code the tax collector is not required to sell the property, but may bring suit therefor. That section reads (so far as applicable here): "The Controller may, at any time after a delinquent list has been delivered to a Tax Collector, direct such Tax Collector not to proceed in the sale of any property on said list whereon the taxes shall amount to $300.00 or more." The section then authorizes the beginning of suit for the collection of the unpaid taxes.

In 20 California Jurisprudence, page 908, after defining the term "volunteers" the text reads: "On the other hand if a person, either by compulsion of law or to relieve himself from liability, or to save himself from damage, pays money which another ought to have paid, the law implies a request on the third person's part and a promise to repay, and the person paying has the same right of action as if he had paid the money at the other's express request. Payment under such circumstances will not be deemed to have been officiously made, nor will the payor be looked upon as a mere intermeddler in matters in which he has no concern."

To the same effect is the text in 41 C. J. 13, to wit: "One who is compelled by reason of legal liability therefor, to pay an obligation for which another, in equity and good conscience should pay, may recover from that other the money so paid. It is not necessary that the payment should

have been coerced by actual legal proceedings. The mere existence of the liability is sufficient." (Citing authorities in footnotes.)

The title to the property covered both by the agreement and the conveyance to which we have referred stood of record in the name of the plaintiff on the first Monday in March, 1928. This fixed a legal liability upon the part of the plaintiff for the taxes which would, and did, accrue in November, 1928, and which should have been paid prior to the fifth day of December, 1928. Or, as said in *San Gabriel Valley Land & Water Co.* v. *Witmer Bros. Co.*, 96 Cal. 623 [29 Pac. 500, 502, 31 Pac. 588, 18 L. R. A. 465, 470]: "The personal obligation to pay taxes does not depend upon a continued ownership of the property assessed, until after the levy of the taxes or until the time for payment arrives." (See, also, *Finnell* v. *Finnell*, 159 Cal. 535 [114 Pac. 820].) All of which shows that the argument of voluntary payment is untenable.

█ If the agreement entered into between the plaintiff and the defendant February 15, 1927, was merged into the deed of grant, bargain and sale, bearing date of February 23, 1928, and delivered into the manual custody and control of the defendant on the 23d of March, 1928, then and in that case it did not cease, as contended for by the appellant; it was still in force and effect on the first Monday of March, 1928, and obligated the appellant to pay the taxes involved in this action.

█ This action involving the payment of money by one, the payment of which another should, in good conscience, have made, involves an equitable principle applicable to the delivery of deeds in escrow, by reason of the fact that the agreement entered into between the parties shows clearly that it was their intention that as a part of the purchase price the defendant should pay all accruing taxes after the date of the execution of the instrument, and to effect the intention and to do equity the passing of title under the deed will be held to relate back and to take effect as and of the date of the constructive or conditional delivery—in this case, February 25, 1928, at which time it was placed in the hands of the Security Title Insurance & Guaranty Company, to be delivered to, or placed in the manual custody of the

defendant upon his compliance with payment, as promised in his letters.

Section 1059 of the Civil Code reads: "Though a grant be not delivered into the possession of the grantee, it is to be deemed constructively delivered in the following cases: 1. When the instrument is, by the agreement of the parties at the time of the execution, understood to be delivered, and under such circumstances the grantee is entitled to immediate delivery; or, 2. Where it is delivered to a stranger for the benefit of the grantee and his assent is shown or may be presumed." The consent of the grantee was express, and the delivery was made in pursuance thereof.

In *Marr* v. *Rhodes*, 131 Cal. 267 [63 Pac. 364], involving an exchange of lands, in following the equitable rule which we have just stated, the court held, quoting from the syllabus: "Deeds placed in escrow upon an exchange of lands when finally delivered after all the conditions of the agreement have been fulfilled, relate to the date of their execution, and the rights of the parties are the same as if the deeds had been delivered on such date."

In 9 California Jurisprudence, page 172, the text reads: "A grant, without actual delivery into the possession of the grantee, may be delivered constructively by delivery to a third person for the grantee, as where it is delivered to a stranger for the benefit of the grantee, and his assent is shown or may be presumed. Thus, where the depositary of a deed in the presence of the grantor and grantee, told the former that he could not at that time get the 'papers' which he desired to give to the latter, and the grantee requested the depositary to keep them for her, it was held, upon the presumption that the grantor assented to that arrangement, that *eo instanti* there was a delivery of the deed to the grantee. The grantee's assent is not required at the moment of delivery to the third person, but may be given subsequently, and even after the death of the grantor, the deed taking effect by relation, provided the rights of third persons have not intervened. . . . While a deed cannot be delivered conditionally to the grantee, it may be delivered conditionally to a third person, in which case it is either a deed absolute, or an escrow."

In *Hawi Mill & Plant. Co., Ltd.,* v. *Finn*, 82 Cal. App. 255 [255 Pac. 543], the court in referring to the rule of relation

now under consideration, used the following language: ''The cases cited merely hold that no title passes until the condition of the escrow is so far performed that the grantee is entitled to the possession of the deed; that as the escrow was abandoned, the deed was not delivered pursuant to the escrow instructions, and therefore became effective only at the time of the delivery. While that is true, it is likewise the rule that when the escrow is complete its completion relates back to the date when the papers were placed in escrow.'' (Citing authorities.)

In *Green* v. *Skinner*, 185 Cal. 437 [197 Pac. 60], the court held the doctrine of relation back applicable, but not so as to cut out intervening equities. The language of the opinion reads: ''Even so, however, such assent when given will, as between the grantor and the grantee, relate back to the time when the grantor first handed the deed over to a third person to be delivered to the grantee. Such assent may be after the death of the grantor and yet it is effective by relation, so that the deed will be taken as delivered in the lifetime of the grantor. This is well established, but with it goes the modification, likewise settled as the law, that the assent of the grantee will operate retroactively by relation only when the rights of third persons have not intervened.''

In 10 California Jurisprudence, page 593, the equitable principle here involved is explained. The text reads: ''The general rule that a deed does not transfer title or that an instrument does not take effect until the contingency has occurred which entitles the grantee to a delivery, sometimes works a hardship. To overcome this the courts have, where the occasion has required it, resorted to a fiction whereby the subsequent delivery is held to have related back and taken effect as of the first delivery. So where, after the delivery of a deed as an escrow, the grantor conveys to another who has notice of the former transaction, the first deed will be held to have taken effect as of the date of the escrow, and a note delivered as an escrow takes effect as of the date of its delivery to the depositary, upon the happening of the condition of the escrow, where, in the meantime the maker has died. So, also, where a deed has been delivered in escrow in favor of a grantee who has no knowledge of it, the assent of the grantee thereto may be given after the death of the grantor, and it will be effected by

relation so that the deed will be taken and delivered in the lifetime of the grantor, provided the rights of third persons have not intervened."

In 10 Ruling Case Law, beginning on page 627, the rule which we are considering is thus stated: "Where an instrument has been delivered to a depositary, as a writing or escrow of the grantor, it does not become a deed and no legal title or estate passes until the condition has been performed or the event has happened upon which it is to be delivered to the grantee, or until the delivery by the depositary to the grantee. Following this rule, while a deed is in escrow awaiting the performance of conditions precedent to the delivery thereof by the vendor to the vendee, there is no change in the title or right of possession to the property, although the purchaser occupies it with the consent of the vendor, in anticipation of completing the contract of sale and purchase. . . . The deposit of a deed in escrow creates, however, in the grantee, such an equitable interest in the property, as that, upon full performance of the conditions according to the escrow agreement, the title will vest at once in him. . . . This doctrine rests upon the general principle in equity that from the time of a contract for the sale of land, the vendor, as to the land, is considered a trustee for the purchaser, and the vendee, as to the purchase money, a trustee for the vendor."

Applying the equitable principles of relation back, as held by the foregoing authorities, the grant, bargain and sale deed delivered by the plaintiff to the defendant should be held to speak as and of the twenty-fifth day of February, 1928, at which time it was placed in the hands of the depositary for the use and benefit of the defendant, and speaking as of that date, none of the provisions of section 1113 of the Civil Code were violated. (See, also, *Fickling* v. *Jackman*, 203 Cal. 657–663 [265 Pac. 810].)

Exception is also taken to the form of the findings in this case, the findings being simply in substance, that the defendant owes the plaintiff so much money. By reason of what we have said, it satisfactorily appears that whether the findings of the court in this case are sufficient or insufficient, any finding that we might draft would necessarily be adverse to the contentions of the appellant. From which the conclusion must be drawn that no correction of the find-

ings in this case would be of benefit to the appellant, and that the appellant has suffered no injury by reason of any alleged defect therein.

The judgment is affirmed.

Thompson (R. L.), J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 27, 1933.