[Civ. No. 8998. First Appellate District, Division Two.—May 25, 1933.]

DE NURE LAND & INVESTMENT CORPORATION (a Corporation), Appellant, v. SECURITY FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Corporation) et al., Respondents.

Finlayson, Bennett & Morrow and Henry L. Knoop for Appellant.

Rohe, Tottenheim & Weikert, Alfred C. Bowman, O'Melveny, Tuller & Myers and Pierce Works for Respondents.

STURTEVANT, J.—The plaintiff commenced an action to obtain a judgment of declaratory relief. The defendants answered and after the trial findings were made in favor of the plaintiff. Contending that through errors of law the trial court did not grant it all the relief to which it was entitled, the plaintiff has appealed.

Heretofore D. D. De Nure and Flora W. De Nure, his wife, were the owners of certain lands in Los Angeles. H. W. Genter and his associate desired to purchase the land, make certain improvements thereon, subdivide it and sell lots according to the subdivision. To carry out the plan the De Nures conveyed to the Pacific Southwest Trust and Savings Bank, the predecessor of the defendant Security First National Bank of Los Angeles. At the same time a declaration of trust was made in which the De Nures were named as the sellers, the bank as the trustee, and H. W. Genter and his associate as beneficiaries. Under the terms of the declaration of trust the De Nures were to be paid $66,250. Of that sum $15,000 was to be paid on the execution of the trust agreement and the balance was to be paid out of installments to be collected on the sales of lots. The beneficiaries agreed to grade the streets, put in water-pipes and

install some sidewalks and curbs. Said improvements were to be made at the cost and expense of the beneficiaries and to secure the payment of the cost a surety bond in the sum of $10,000 in favor of the bank was to be executed. The execution of said bond was made a condition precedent to the operation of the trust; furthermore, if said beneficiaries failed to put up the bond then the trustee was authorized to post notices and record the same in such manner as to comply with section 1192 of the Code of Civil Procedure. Under different provisions of the declaration forfeitures were provided for and under certain contingencies the lands could be foreclosed and taken back by the sellers. Shortly after the execution of the above papers H. W. Genter became the sole beneficiary. Stewart E. Bruce became interested in a financial way, but his rights are in no manner in controversy. Toward the end of 1924, H. W. Genter desired to proceed to install the improvements above mentioned. He arranged a contract with George N. Snyder as contractor. Under the terms of that contract the contractor undertook to install the improvements for the sum of $19,000. Said sum was to be paid in installments. For the making of the payments Genter covenanted that he would instruct the defendant bank, as trustee, to establish an ''Improvement Fund''. The contract provided that before it should take effect H. W. Genter should obtain the consent of Stewart E. Bruce, the bonding company and the De Nures. The consents were obtained. The consent of the De Nures, among other things, provided as follows: ''That the undersigned jointly and severally agree that in the event the undersigned or either of them should at any time foreclose or otherwise take back directly or indirectly any of said real estate covered by said trust and known as tract number 3809, that they hereby agree to thereupon pay to said George N. Snyder, contractor, for the improvements installed upon said tract by said Snyder in accordance with the foregoing contract a sum or sums equal to $83.33 for each lot which may be taken back or received by them, or either of them, said sum of $83.33 per lot being agreed proportionate cost per lot for such improvements. . . . '' To secure the contract H. W. Genter assigned to the contractor his rights as a beneficiary under the trust. In due time the contractor had fully performed his contract, but he had

not been paid. There remained payable to Snyder approximately $11,000. At about that time Genter assigned one-third of his beneficial interest to the defendant Kate E. Alexander. The contractor commenced to make demands that the balance be paid to him. Thereupon Genter went to San Antonio, Texas, where he met by appointment the defendant W. L. Alexander, the son of Kate E. Alexander. Genter explained to W. L. Alexander the indebtedness to Snyder and that the latter was threatening to foreclose under the power given to him in the improvement contract. Thereupon W. L. Alexander gave to Genter his check for $11,000, and directed him to return to Los Angeles, purchase the Snyder contract and everything that went with it for W. L. Alexander's account. As Mr. Alexander resided in Mexico he directed that the title be taken in the name of his mother, Kate E. Alexander. Genter returned to Los Angeles and, contrary to instructions, he purchased the improvement contract in the name of Caroline Vonderahe, and he caused Snyder to assign the beneficial interest in the trust to Genter. Later W. L. Alexander went to Los Angeles and on ascertaining the facts he caused Caroline Vonderahe to transfer the improvement contract to Kate E. Alexander in trust for her son and a little later she in turn assigned it to James Oviatt, who now holds it in trust for W. L. Alexander. Having found the foregoing facts, as a conclusion of law the court found that in the event of a foreclosure by the De Nures that they "shall pay to the defendant W. L. Alexander for the improvements installed on said real property by the said Snyder, in accordance with the improvement contract, the sum of $83.33 for each lot which may be so taken back or received by them . . . " not to exceed the balance due under the improvement contract. It is that specific finding of which the plaintiff complains and makes the following points:

The plaintiff contends that the liability of the De Nures was that of sureties. It argues that the "Improvement Fund" provided for in the improvement contract must be considered as the principal and the De Nures as the sureties. The proposition is not sustained by the facts. There is nothing in the contract which supports that contention. Designating Genter's moneys by the name "Improvement Fund" injected no new principle. *Braun* v.

*Crew*, 183 Cal. 728 [192 Pac. 531], and *Jensen* v. *Burton*, 117 Cal. App. 66 [3 Pac. (2d) 324], contain nothing to the contrary. Continuing the plaintiff asserts that one who is not nominally a surety, but who would suffer the same injurious consequences as would an express surety if he were compelled to pay the debt, will be accorded in equity the same rights as an express surety. (*Finnell* v. *Finnell*, 159 Cal. 535 [114 Pac. 820].) The rule of law is as claimed, but no relation between that rule and the facts of this case is shown. Again, the plaintiff cites *Hoffman* v. *Habighorst*, 38 Or. 261 [63 Pac. 610, 53 L. R. A. 908], in which the court quotes with approval, "If a promise be made for the benefit of another, without sharing in the consideration, the promisor will be a surety, whatever may be the form of the agreement." That rule is well settled. (50 C. J. 15.) But, in the instant case the promise of the De Nures was for their own benefit and not that of another. Furthermore, if they elected to take over any lots the consideration would wholly move to them and no part thereof would move to another. Not only were they to share in the consideration, they were to get all of it. The fact that, in the absence of the consent contract, the burden of paying for the improvements rested on Genter, did not change the rule in the least. In *Megraw* v. *Hamilton Trust Co.*, 252 Pa. 425 [97 Atl. 581], the Supreme Court of Pennsylvania was considering the following facts: Richard McDougal was the owner of a lot in Philadelphia on which he desired to erect twelve dwellings. He conveyed to the Hamilton Trust Company. The latter employed C. F. McFadden as contractor. The latter contracted to purchase tile from Standard Tile Company. To protect the latter, the trust company agreed in writing that if McFadden did not pay it would see that the property was made available to the Standard Company by payment of its bill out of the proceeds on sale, by conveyance to the Standard Company, or else by mortgage in the amount of its bill. The Standard Company sued the trust company. The latter claimed it was a surety. On page 582 of 97 Atl. the court said: "No complaint is made that the measure of damage applied was incorrect, but it is contended that the obligation of the defendant under the declaration above recited was that of surety, and that, because the principal had notified the surety that the claim

made against him by the plaintiff was contested, the surety had the right to decline performance of this contract until the debt due from the principal had been legally determined. A sufficient answer to this is that the obligation cannot be construed as a contract of suretyship. It does not by its terms make the trust company answerable to the plaintiff for the debt of McFadden. A suit against the trust company for McFadden's debt could not have been maintained. What the trust company agreed to do was to make available to the plaintiff, to answer McFadden's debt, a certain property over which, while not the holder of the legal title, it had absolute control quite as much as though it had been the holder of such title, in one or other of three ways, by payment of the proceeds on sale of the property, by conveyance, or by mortgage in the amount that McFadden owed. When the plaintiff made demand of the trust company that it keep its promise by doing one or other of these things, the plaintiff's contract with McFadden was at an end. The indebtedness had been contracted, and McFadden had failed. The plaintiff therefore was in position to make the demand.'' Having cited *Hoffman* v. *Habighorst, supra,* the plaintiff hastens to assert that no part of the consideration in the consent contract was to move to its assignors. The plaintiff cites and relies on *Hughes* v. *Ladd,* 42 Or. 123 [69 Pac. 548] ; *First Nat. Bank* v. *Alexander,* (Tex. Civ. App.) [4 S. W. (2d) 298] ; *McCandless & Co.* v. *Hadden,* 9 B. Mon. (Ky.) 186; 50 C. J. 14. Those authorities are not helpful. Each one involved a set of facts in which, by the terms of the contract, no consideration moved to the alleged surety. The defendants cite and rely on section 2831 of the Civil Code. That section, with interpolations, provides: A surety is one who at the request of another, Snyder, and for the purpose of securing to him, Snyder, a benefit, becomes responsible for the performance by the latter, Snyder, of some act in favor of a third person (the improvement fund or Genter). Having done so, they argue vigorously that such was not the contract and therefore the relation of surety was never created between the De Nures and either the fund or Snyder. We think they are entirely correct.

The plaintiff claims that when Snyder assigned the improvement contract to Mrs. Alexander for the account

of her son and, without the consent of the De Nures, assigned the beneficial interest of Genter under the trust agreement back to Genter, that the De Nures, as sureties, were thereby discharged. As we have shown above that the De Nures were not sureties, it is immaterial what Snyder assigned without their consent.

In its final brief the plaintiff asserts that if the De Nures were not sureties that then they were principal debtors and that when they signed the consent agreement a novation occurred as to the trust agreement. The point is not well founded. The trust agreement was a tripartite contract. Snyder was not a party to it. In order to effect a novation involving the introduction of a new party there must be a mutual agreement among the parties to the old contract and the parties to the new contract whereby the new obligation is substituted for the old one. (46 C. J. 600.) The record does not show that this case comes within that rule.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.